UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

    - v. -                           :

GORDON JOHNSTON,                    :

       Defendant.                  :

- - - - - - - - - - - - - - - - x

ORIGINAL

# 16 CRIM 406

**SEALED INFORMATION**

16

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6|13|16

## COUNT ONE

(Conspiracy to Convert United States Property, to Commit
Securities Fraud and to Defraud the United States)

    The United States Attorney charges:

### Relevant Individuals and Entities

     1.   At certain times relevant to this Information,
Investment Advisor-A was a registered investment advisor with
the U.S. Securities and Exchange Commission ("SEC").  Investment
Advisor-A managed approximately $7.8 billion in a range of
investments for clients.  Until September 2013, Investment
Advisor-A managed six active hedge funds.  From in or about 2009
until on or about September 30, 2013, Investment Advisor-A
maintained a hedge fund that invested primarily in debt
instruments issued by healthcare companies ("Fund-1").
Investment Advisor-A also maintained a long-short equity hedge
fund focused on healthcare stocks ("Fund-2").  Investment
Advisor-A's primary place of business was New York, New York.

2.    From at least in about 2005 through in or about 2011, Investment Advisor-A retained GORDON JOHNSTON, the defendant, as a consultant who, in exchange for a monthly consulting fee, provided "political intelligence" related to, among other things, the likelihood and timing of the United States Food and Drug Administration's ("FDA") approval of Abbreviated New Drug Applications ("ANDAs").  ANDAs are applications drug companies must submit to the FDA to obtain approval to sell generic versions of brand name drugs.  Prior to being a consultant, JOHNSTON had served as the Deputy Director of the FDA's Office of Generic Drugs ("OGD"), which is responsible for evaluating and approving ANDAs.  At all times relevant to this Information, JOHNSTON worked for a trade association for manufacturers and distributors of generic drugs (the "Trade Association"), in addition to serving as consultant to Investment Advisor-A.

3.    At all times relevant to this Information, the FDA was a federal agency within the U.S. Department of Health and Human Services that was responsible for protecting the public health by, among other things, ensuring that drugs intended for human use were safe and effective.  OGD was an office within the FDA charged with, among other things, approving a pharmaceutical company's application to sell a generic drug in the United States.  The FDA's decision to

2

approve a generic drug typically has a positive impact on the stock price of the company receiving approval, and a negative impact on the stock price of the company producing the brand name drug.

4.   At all times relevant to this Information, the FDA's evaluation of ANDAs was confidential information.   The FDA did not disclose to the public when, if ever, an ANDA would be approved nor did the FDA disclose to the public the status of its deliberations about an ANDA.

5.   At all times relevant to this Information, FDA employees were prohibited from disclosing non-public information that they learned in the course of their employment at the FDA to individuals outside the FDA, unless such disclosure was authorized by law.   That prohibition recognized that the disclosure of such information could affect bond and stock markets.   FDA employees also were subject to the Standards of Ethical Conduct for Employees of the Executive Branch, which prohibited improperly using non-public information to further private interests.   5 C.F.R. § 2635.703(a).

6.   At all times relevant to this Information, a co-conspirator not named as a defendant herein ("CC-1") served as Fund-1's portfolio manager.   As the portfolio manager for Fund-1, CC-1 directed the majority of Fund-1's investments.

7.   At all times relevant to this Information, a co-conspirator not named as a defendant herein ("CC-2") served as the portfolio manager for Fund-2's specialty pharmaceuticals portfolio (the "Specialty Pharmaceuticals Portfolio").  As portfolio manager, CC-2 had sole decision making authority for investments in the Specialty Pharmaceuticals Portfolio.

8.   At all times relevant to this Information, Individual-1 was a senior official at OGD.  In this position, Individual-1 had access to confidential FDA information about, among other things, the FDA's internal deliberations about the timing and likelihood of the FDA's approval of generic drugs. Individual-1 was subject to the FDA's confidentiality policies and owed the FDA a duty of confidentiality.

9.   At all times relevant to this Information, Momenta Pharmaceuticals, Inc. ("Momenta") was a corporation headquartered in Cambridge, Massachusetts.  Momenta's stock traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ") and was listed under the ticker symbol "MNTA."

10.   At all times relevant to this Information, Sanofi-Aventis S.A. ("Sanofi") was a corporation headquartered in France.  Sanofi's stock traded on the New York Stock Exchange ("NYSE") through the issuance of American Depository Receipts

4

("ADRs") under the ticker symbol "SNY." Sanofi's stock also traded on the Euronext Paris stock exchange.

<u>The Scheme to Defraud</u>

11.   From at least in or about 2005 through at least in or about January 2011, GORDON JOHNSTON, the defendant, CC-1, CC-2, and others known and unknown, participated in a scheme to obtain and convert to their own use confidential and material non-public information from the FDA concerning, among other things, the FDA's internal deliberations regarding the approval of certain ANDAs.

12.   As a part of the scheme, GORDON JOHNSTON, the defendant, improperly obtained confidential and material non-public information from Individual-1, among other FDA employees, and then provided it to CC-2, who, knowing that JOHNSTON had obtained the information improperly and in breach of a duty, used the information to purchase and sell securities in Fund-2. At times, CC-2 provided to CC-1 the confidential and material information obtained from JOHNSTON, which CC-1 also used to purchase and sell securities in Fund-1.

13.   As a further part of the scheme, CC-2 caused Investment Advisor-A to confer a pecuniary benefit upon JOHNSTON in the form of consulting fees in exchange, in part, for the confidential and material non-public information that JOHNSTON

5

improperly obtained from Individual-1, among other FDA
employees.

### The Enoxaparin ANDA Approval

14.   For example, GORDON JOHNSTON, the defendant,
improperly obtained confidential and material non-public
information concerning the FDA's approval of a generic version
of an anticoagulant drug called enoxaparin.  Beginning in the
mid-1990s, Sanofi manufactured and sold enoxaparin under the
brand name Lovenox.  In 2005, a publicly traded pharmaceutical
company that was partnered with Momenta filed an ANDA to sell a
generic version of Lovenox (the "Momenta ANDA").  At the time
that the Momenta ANDA was filed, two other publicly traded
pharmaceutical companies had ANDAs pending for generic Lovenox,
which had both been filed in June 2003.

15.   On or about July 23, 2010, the FDA approved the
Momenta ANDA.  This approval was positive news for Momenta, as
Momenta was the first company to receive approval to sell
generic Lovenox.  In addition, at the time it received the FDA's
approval, Momenta had developed only one other drug, which
rendered Momenta's future financial performance highly
contingent on whether Momenta received generic Lovenox approval.
Accordingly, when the FDA announced its approval of the Momenta
ANDA on or about July 23, 2010, Momenta's stock price increased
nearly 100 percent.

16.   The approval of the Momenta ANDA on or about July 23, 2010 was negative news for Sanofi, which no longer had a monopoly on the drug.  As a result, on or about July 23, 2010, the price of Sanofi's ADRs declined.

17.   Before the FDA approved the Momenta ANDA on or about July 23, 2010, OGD personnel, including Individual-1, had regular meetings regarding the progress of the Momenta ANDA and the timing, if any, of the FDA's approval.  As part of this process, the FDA maintained an internal document tracking the progress of ANDAs, including the Momenta ANDA, and estimating the likelihood of their approval (the "Tracking Document").  The information contained in the Tracking Document was highly confidential and not intended to be disclosed to anyone outside of the FDA.  Individual-1 had access to the Tracking Document in the course of his employment.

18.   During the course of his consulting relationship with Investment Advisor-A and CC-2, GORDON JOHNSTON, the defendant, improperly obtained from Individual-1, among other FDA employees, confidential and material non-public information about the status of the approval of a generic Lovenox ANDA, including information from the Tracking Document.  Among other pieces of information, in or about late December 2009 or early January 2010, JOHNSTON told CC-2, in sum and substance, that the

7

Tracking Document reflected that OGD was moving toward approval of a generic Lovenox ANDA.

19.   After obtaining this information from GORDON JOHNSTON, the defendant, CC-2 used it to amass a long position in Momenta stock valued at approximately $35 million, and a short position in both Sanofi's European-traded stock and U.S.-traded ADRs, together valued at approximately $78 million.

20.   CC-2 also passed the information obtained from GORDON JOHNSTON, the defendant, to CC-1, so that CC-1 could execute securities trades in Fund-1.  Based in part on this information, in or around January 2010, CC-1 instructed a subordinate to research Sanofi credit default swaps ("CDSs") in anticipation of a generic Lovenox approval and thereafter, beginning in or about March 2010, caused Fund-1 to purchase at least five million Sanofi CDSs.  These CDSs, which were a form of insurance against the risk that Sanofi would default on its debt, stood to increase in price when a generic Lovenox ANDA was approved.

Duty of Trust and Confidence Owed by JOHNSTON to Individual-1

21.   At all times relevant to this Information, GORDON JOHNSTON, the defendant, and Individual-1 were friends who had a history, pattern and practice of sharing confidences with each other relating to their careers, families, relationships, and plans for the future.  JOHNSTON and Individual-1 frequently

8

discussed both professional and personal matters, having had the common experience of working together at the FDA's OGD for over 12 years.  For a period of time while JOHNSTON and Individual-1 worked at the FDA together, JOHNSTON supervised Individual-1, and JOHNSTON was a mentor to Individual-1.  JOHNSTON and Individual-1 maintained a professional and personal relationship even after JOHNSTON left the FDA, by virtue of, among other things, JOHNSTON's consulting relationship with the Trade Association, which caused him to have frequent communications with Individual-1.

22.  GORDON JOHNSTON, the defendant, understood that Individual-1 expected that JOHNSTON would maintain the confidentiality of the information Individual-1 shared, by virtue of their relationship of trust and confidence. Nevertheless, JOHNSTON breached his duty of trust and confidence to Individual-1 by sharing, among other things, the ANDA-related information with CC-2, whom JOHNSTON knew was going to use the confidential information to purchase and sell securities.

## Statutory Allegation

23.  From at least in or about 2005 through at least in or about January 2011, GORDON JOHNSTON, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States to wit, conversion of

9

property of the United States, in violation of Title 18, United States Code, Section 641, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and to defraud the United States and an agency thereof, to wit, the FDA.

24. It was a part and an object of the conspiracy that GORDON JOHNSTON, the defendant, and others known and unknown, knowingly would and did embezzle, steal, purloin, and convert to their use and the use of others records, vouchers, money, and things of value of the United States and a department and agency thereof, to wit, the FDA, the value of which exceeded the sum of $1000, and would and did receive, conceal, and retain the same with intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641.

25. It was further a part and an object of the conspiracy that GORDON JOHNSTON, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities,

10

manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by (a) employing devices, schemes and artifices to defraud; (b) making and causing to be made untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

26. It was further a part and an object of the conspiracy that GORDON JOHNSTON, the defendant, and others known and unknown, willfully and knowingly, using deceit, craft, trickery and dishonest means, would and did defraud the United States and the FDA by obtaining confidential information about the FDA's internal deliberations related to generic drug approvals, thereby impeding, impairing, defeating and obstructing the lawful function of the agency, in violation of Title 18, United States Code, Section 371. 5 C.F.R. § 2635.703(a)..

<u>Overt Acts</u>

27. In furtherance of the conspiracy and to effect its illegal objects, GORDON JOHNSTON, the defendant, and his co-

11

conspirators, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about January 7, 2010, CC-2 caused Fund-2 to purchase Momenta securities.

b.   On or about January 13, 2010, CC-2 and JOHNSTON spoke by telephone.

c.   On or about January 14, 2010, CC-2 caused Fund-2 to sell short Sanofi securities.

d.   On or about January 22, 2010, CC-1 instructed a subordinate to research Sanofi CDSs in anticipation of a generic Lovenox approval.

e.   On or about January 9, 2011, JOHNSTON requested payment for his FDA consulting services.

(Title 18, United States Code, Section 371.)

### COUNT TWO
(Securities Fraud)

The United States Attorney further charges:

28.   The allegations contained in paragraphs 1 through 22 and 27 of this Information are repeated and realleged as if fully set forth herein.

29.   From at least in or about 2009 through at least in or about July 2010, in the Southern District of New York and elsewhere, GORDON JOHNSTON, the defendant, willfully and knowingly, directly and indirectly, by use of the means and

instrumentalities of interstate commerce, and of the mails, and the facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b5 and 240.10b5-2, by (a) employing devices, schemes and artifices to defraud; (b) making and causing to be made untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, to wit, JOHNSTON provided to CC-2 material non-public information about the status of the FDA's deliberations surrounding generic Lovenox, in breach of a duty to Individual-1, which JOHNSTON knew CC-2 was going to use for the purpose of executing securities transactions.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and Title 18, United States Code, Section 2.)

### COUNT THREE
(Conspiracy to Commit Wire Fraud)

The United States Attorney further charges:

30.   The allegations contained in paragraphs 1 through 22 and 27 of this Information are repeated and realleged as if fully set forth herein.

31.   From at least in or about 2005 through at least in or about January 2011, in the Southern District of New York and elsewhere, GORDON JOHNSTON, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

32.   It was a part and object of the conspiracy that GORDON JOHNSTON, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349.)

14

## COUNT FOUR
(Wire Fraud)

The United States Attorney further charges:

33.   The allegations contained in paragraphs 1 through 22 and 27 of this Information are repeated and realleged as if fully set forth herein.

34.   From at least in or about 2005 through at least in or about January 2011, in the Southern District of New York and elsewhere, GORDON JOHNSTON, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, JOHNSTON and others schemed to defraud the FDA of confidential information regarding generic drug approvals by improperly obtaining that information from Individual-1 through deceptive means, including through the use of emails, which information JOHNSTON provided to CC-2 knowing that CC-2 intended to use the information for the purpose of executing securities transactions.

(Title 18, United States Code, Sections 1343 and 2.)

15

## FORFEITURE ALLEGATION

35.   As a result of committing one or more of the offenses alleged in Counts One through Four of this Information, GORDON JOHNSTON, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Four of this Information.

### Substitute Assets Provision

36.   If any of the above-described forfeitable property, as a result of any act or omission of GORDON JOHNSTON, the defendant,

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

16

                d.    has been substantially diminished in value;

or

                e.    has been commingled with other property

which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), and Title 28, United States

Code Section 2461, to seek forfeiture of any other property of

JOHNSTON up to the value of the forfeitable property described

above.

      (Title 18, United States Code, Section 981(a)(1)(C);
         Title 21, United States Code, Section 853(p);
         Title 28, United States Code, Section 2461.)

Preet Bharara

PREET BHARARA
United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

### UNITED STATES OF AMERICA

- v. -

**GORDON JOHNSTON,**

Defendant.

---

### SEALED INFORMATION

16 Cr. ___

(15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b5-2; 18 U.S.C. §§ 371, 641, 1343, 1349 & 2.)

PREET BHARARA
United States Attorney

---

6/13/16 *Filed Sealed Information*
*Filed Waiver of Indictment*